# United States Court of Appeals
## For the First Circuit

No. 24-1978

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTIAN JOEL ANDINO-ARROYO, a/k/a Christian Finfo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Lynch, and Aframe,
Circuit Judges.

Luis A. Rodríguez Muñoz and Landrón Vera LLC on brief for appellant.
Jeniffer Vélez-Pérez, Assistant United States Attorney, Juan Carlos Reyes-Ramos, Assistant United States Attorney, Chief, Appellate Division, and W. Stephen Muldrow, United States Attorney, on brief for appellee.

August 4, 2026

**LYNCH**, **Circuit Judge**. After Christian Joel Andino-Arroyo[1] was convicted in 2011 of conspiring to possess cocaine with intent to distribute it, he was sentenced to five years' imprisonment and eight years of supervised release. Andino now appeals from the sentence imposed by the district court after the fourth occasion of revocation of his supervised release. Although the parties jointly recommended an above-Guidelines prison term of fifteen months with no further supervised release, the district court rejected this recommendation. The court instead imposed thirty-six months' imprisonment, the statutory maximum under 18 U.S.C. § 3583(e)(3), with no supervised release to follow. In explaining that upward variance, the court emphasized Andino's repeated and "utter disregard for the law and the [court-imposed] conditions of supervision," and his "fail[ure] to take advantage of the opportunities and assistance provided by the probation office and the [c]ourt for his reintegration into the free community."

On appeal, Andino raises two challenges to his revocation sentence. First, he contends that the district court failed to justify its decision to vary upward after he had argued at sentencing that the sentence was harsher than necessary. Second, in what Andino characterizes as a question of statutory

_____

[1] We refer to the appellant as "Andino," consistent with Spanish naming customs.

interpretation of 18 U.S.C. § 3583(e), he argues that the sentence was so harsh as to be punitive and reasons from the sentence's purported severity that the court relied on a factor excluded from consideration under that statutory provision. Indeed, he argues the sentence amounted to "retributive punishment." We affirm.

## I.

The relevant facts are undisputed.

In 2011, Andino pled guilty to one count of conspiring to possess with intent to distribute at least 500 grams, but less than two kilograms, of cocaine within 1,000 feet of a protected location, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860. The district court sentenced Andino to five years' imprisonment, followed by eight years of supervised release.[2]

Over the ensuing years, Andino repeatedly violated the conditions of his supervised release, leading on three occasions to further imprisonment. As to the first occasion, in March 2017, nearly two years into his first term of supervised release, probation notified the district court that Andino had been arrested after police found a high-capacity pistol magazine containing twenty-nine rounds of .40-caliber ammunition in the car he was driving. In April 2018, the court revoked Andino's supervised release after finding that he had violated a condition by

---

[2] The same district court judge later imposed each of Andino's four revocation sentences.

- 3 -

committing the federal crime of possessing ammunition as a convicted felon. The court sentenced him to six months' imprisonment, followed by four years of supervised release.

As to the second occasion, in September 2020, about ten months into his second term of supervised release, probation reported that Andino had tested positive for marijuana after he denied using it, had spent nights at a friend's residence without notifying probation, and had become unemployed without providing evidence that he was seeking work. With Andino's agreement, the court modified the conditions of his supervised release to add location monitoring and a curfew. Four days later, probation went to his approved residence to install the monitoring equipment but could not find Andino. Andino failed to report to or contact probation, and nearly a month later, probation still did not know his whereabouts. In September 2021, the court revoked supervised release a second time after finding that Andino had violated three conditions: failing to report to his probation officer as instructed, failing to live at a residence approved by probation, and failing to follow his probation officer's instructions. The court sentenced him to six months' imprisonment, followed by two years of supervised release with additional special conditions including home detention with location monitoring for six months.

As to the third occasion, in April 2023, fifteen months into his third term of supervised release, probation reported that

Andino had repeatedly failed to attend substance abuse treatment and, despite denying drug use, had tested positive for cocaine on four occasions and oxycodone on one occasion. At Andino's request and with the government's agreement, the district court held the revocation hearing in abeyance for ninety days to allow him to complete outpatient treatment and continue working. The court explicitly left in place Andino's existing supervised release conditions, including electronic monitoring, and imposed a curfew. Six days later, probation received several alerts of Andino's unauthorized departures from and returns to his residence. Andino was instructed to report to probation the next morning to discuss the alerts, but he did not. After probation was unable to locate him, his probation officer found the electronic monitoring receiver inside a black plastic bag behind a dumpster at the public housing complex where he lived. That bag also contained several empty plastic vials resembling those used to sell controlled substances. In July 2023, the district court revoked supervised release a third time after finding that Andino had violated six conditions: unlawfully using and possessing controlled substances, failing to follow his probation officer's instructions, failing to participate in substance abuse treatment, failing to comply with location monitoring, failing to report to his probation officer as instructed, and failing to report his change of address. The court sentenced him to twelve months' imprisonment, followed by eighteen

months of supervised release, and imposed a six-month curfew with electronic monitoring to begin upon his release from custody.

On March 11, 2024, before his release from prison, Andino's supervised release conditions were explained to him in Spanish, and probation reported that he signed the judgment acknowledging those conditions. Upon his release on June 3, 2024, Andino began serving the term of supervised release at issue here and reported to probation for installation of an electronic monitoring device.

On August 2, 2024, the probation officer filed a motion alleging that Andino had violated four conditions of supervised release: failing to comply with location monitoring, failing to report to the probation officer as instructed, failing to report a change of address, and failing to follow the probation officer's instructions. The motion requested an arrest warrant and a show cause hearing. According to the motion, the probation officer had confirmed that the location monitoring equipment was functioning properly and had reviewed the relevant conditions with Andino. Andino stated that he understood the instructions and would comply. The officer thereafter received repeated alerts that Andino had left and reentered his residence without authorization. Andino admitted to the probation officer that he had been outside his apartment during curfew and beyond the authorized perimeter. The probation officer verbally admonished him and later issued a

- 6 -

written reprimand warning that continued violations would be reported to the district court. Andino signed the reprimand and assured the officer that he would commit no further violations, but the alerts continued without a valid explanation. On July 31, 2024, after receiving an alert that Andino had not returned to his residence as required by his curfew, the probation officer tried unsuccessfully to contact Andino and then contacted Andino's brother, who said he did not know Andino's whereabouts. Over the next two days, the officer continued to receive alerts indicating Andino had not returned to his residence since July 31. As of the filing of the August 2, 2024, motion, Andino had not contacted probation, and his whereabouts remained unknown to probation.

On September 23, 2024, the district court held a fourth revocation hearing. Andino appeared and, through counsel, did not contest the allegations in the probation officer's motion. Defense counsel acknowledged that this was Andino's fourth revocation proceeding and represented that Andino understood the seriousness of his actions. Counsel further explained that, while serving the prison term imposed at his third revocation, Andino lost his mother, a sibling, and his uncle, and that Andino was "not in a great place" psychologically. Counsel added that Andino had since reflected on his actions, knew that he should have contacted his probation officer, and had apologized to the officer before this fourth revocation hearing. In his allocution, Andino told the

court that he was "supremely regretful for everything that [he] did," apologized again to the probation officer, and asked for forgiveness. The parties jointly recommended a sentence of fifteen months' imprisonment with no further supervised release.

After hearing from counsel and Andino, the district court found that Andino had committed the four violations alleged in the probation officer's motion and revoked supervised release. The court classified the violations as Grade C[3] and, given Andino's criminal history category of I, calculated an advisory Guidelines range of three to nine months' imprisonment. The court also noted that, because Andino's original offense was a Class B felony, the statutory maximum under 18 U.S.C. § 3583(e)(3) was three years' imprisonment. Andino did not object to the violation findings, the Grade C classification, the Guidelines calculation, or the court's identification of the statutory maximum.

The district court imposed the statutory maximum prison term of thirty-six months with no supervised release to follow. In explaining that sentence, the court emphasized that this was

---

[3] "U.S.S.G. § 7B1.4(a) provides guideline ranges for imprisonment after revocation of supervised release based on a defendant's violation grade and criminal history category." United States v. Camillo, 165 F.4th 134, 139 n.7 (1st Cir. 2026) (quoting United States v. Dudley, 100 F.4th 74, 85 n.9 (1st Cir. 2024)). Supervised release "[v]iolations are classified as Grade A, B, or C, with Grade A violations being 'the most serious.'" Id. (quoting United States v. Vasquez-Landaver, 128 F.4th 358, 361 n.3 (1st Cir.), cert. denied, 145 S. Ct. 2767 (2025)).

"the fourth time" Andino had been brought before it for "his noncompliant behavior, which demonstrate[d] an utter disregard for the law and the conditions of supervision imposed on him." The court further found that Andino had "failed to take advantage of the opportunities and assistance provided by the probation office and the [c]ourt for his reintegration into the free community." The court also observed that, after repeated curfew violations and reprimands, Andino had "deliberately removed his location monitoring device" and "absconded from supervision," and that this was the "third time" he had absconded. After imposing sentence and advising Andino of his appellate rights, the court noted the probation officer's report that Andino had left his monitoring device in an apartment to which he had no key and directed the officer to seek authorization from the apartment manager to enter the apartment and retrieve it.

Defense counsel's sole objection was that the sentence was "harsher than necessary" in light of Andino's "characteristics and his history." In response, the court asked the probation officer to state on the record the terms of imprisonment imposed at Andino's prior revocations. The officer replied that those terms were six months, six months, and twelve months. The court explained that those prior terms showed that Andino had "yet to learn his lesson," and that this was "why" it was imposing thirty-six months' imprisonment, with no supervised release to follow

because Andino "just refuses to be supervised." When the court asked whether there was anything else, defense counsel replied, "[n]othing further." Judgment entered on September 25, 2024.

Andino timely appealed.

## II.

The government contends that Andino forfeited the arguments he now presents on appeal by failing to preserve them in the district court and that, at best, they are subject to plain error review.[4] We agree that Andino forfeited these arguments and so review them for plain error. Under the plain error standard, Andino must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Maldonado, 177 F.4th 99, 108 (1st Cir. 2026) (quoting United States v. Sayer, 916 F.3d 32, 37 (1st Cir. 2019)).

---

[4] The government further contends that Andino waived these arguments altogether by failing to address the plain error standard in his opening brief. See United States v. Deschambault, 176 F.4th 9, 28 (1st Cir. 2026). "[W]e need not decide between waiver and forfeiture because '[w]here a defendant's claim would fail even if reviewed for plain error, we have often' simply proceeded to the merits," and we do so here. United States v. Burgos-Balbuena, 113 F.4th 112, 121 n.6 (1st Cir. 2024) (alterations in original) (quoting United States v. Grullon, 996 F.3d 21, 32 (1st Cir. 2021)).

**A.**

Andino first contends that the district court failed to justify its decision to vary upward from the three- to nine-month advisory Guidelines range to the statutory maximum prison term of thirty-six months, particularly in light of the parties' joint recommendation of fifteen months. He argues that "[n]othing in the record" distinguishes him "from the typical defendant who is clearly frustrated with being supervised," that his violations were "common," and that the statutory maximum was thus unjustified.

An objection "need not be framed with exquisite precision" in order to preserve a claim of procedural sentencing error, but it must be "sufficiently specific to call the district court's attention to the asserted error." United States v. Mercado-Cañizares, 133 F.4th 173, 180 (1st Cir. 2025) (quoting United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020)). Andino's sole objection before the district court was that the sentence was "harsher than necessary" in light of his "characteristics and his history." That objection challenged the sentence's length, not the adequacy of the court's explanations, and thus did not alert the district court to the procedural challenge he now raises.[5] What is more, when the court elaborated

---

[5] In his reply brief, Andino relies on Holguin-Hernandez v. United States, 589 U.S. 169 (2020), to argue that his objection was enough to preserve this procedural reasonableness challenge.

- 11 -

on its reasons for imposing the sentence and asked whether there was anything else, counsel answered, "[n]othing further."

A district court "'commits a procedural error' where it 'fail[s] to adequately explain' a 'deviation from the [g]uidelines range.'" United States v. Maldonado-Velazquez, 164 F.4th 154, 158 (1st Cir. 2026) (alterations in original) (quoting United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021)). "When imposing an upward variance, the court 'must make clear which specific facts of the case motivated its decision and why those facts led to its decision.'" Id. (quoting United States v. Flores-Nater, 62 F.4th 652, 657 (1st Cir. 2023)); see also United States v. Perez-Delgado, 99 F.4th 13, 21 (1st Cir. 2024) (holding that, to justify an upwardly variant sentence, the district court must explain why the defendant's case "'differ[s] from the norm' or 'the mine-run of' cases covered by the applicable [Guidelines sentencing range]" (first alteration in original) (quoting United States v. Serrano-Berríos, 38 F.4th 246, 250 (1st Cir. 2022))). The court's explanations may be "express or drawn 'by fair inference from the

---

But Holguin-Hernandez "concerned a defendant's preservation of substantive challenges to sentencing" and "has no bearing on the issue of preservation of procedural reasonableness challenges." United States v. Maldonado, 177 F.4th 99, 108 n.4 (1st Cir. 2026). "[T]he Holguin-Hernandez Court explicitly declined to 'consider the[] matter[]' of 'what is sufficient to preserve a claim that a trial court used improper procedures in arriving at its chosen sentence.'" Id. (second and third alterations in original) (quoting Holguin-Hernandez, 589 U.S. at 175).

sentencing record.'" Maldonado-Velazquez, 164 F.4th at 158 (quoting United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016)). And while the explanations must be adequate "to allow for meaningful appellate review," the district court need not engage in a "rote incantation" of every relevant sentencing factor or address every sentencing argument in detail. United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024) (first quoting Gall v. United States, 552 U.S. 38, 50 (2007); and then quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)).

There was no error here, much less a clear or obvious one. The district court identified the specific facts that motivated its decision, explained why those facts warranted the upward variance, and made clear why Andino's case fell outside the ordinary situation contemplated by the advisory Guidelines range. See Maldonado-Velazquez, 164 F.4th at 159. As the court recognized at the revocation hearing, Andino was before it for a fourth revocation; had already served revocation prison terms of six months, six months, and twelve months; and had absconded from supervision for a third time.[6] That history, which included

---

[6] The four revocation judgments identify fourteen violations in total. The government's brief identifies twenty-four alleged violations -- seventeen as documented in the probation filings that led to Andino's revocations and seven that resulted in modification of Andino's supervision conditions rather than revocation. The difference in figures does not affect our assessment of the adequacy of the district court's explanations.

- 13 -

possession of ammunition as a convicted felon and repeated cocaine use, defeats Andino's attempt to characterize his conduct as limited to "common" violations by someone merely "frustrated" with supervision.  "[S]uch blatant and frequent disregard for [the court's] conditions warranted a steep upward variance."  United States v. Mendes, 107 F.4th 22, 30 (1st Cir. 2024); see also id. at 28-30 (holding that the district court adequately explained both the basis for and the extent of the upward variance by emphasizing the defendant's repeated violations, multiple revocations, and failure to "get the message" that he had to comply with the conditions of release; and further explaining that U.S.S.G. § 7B1.4(a) accounts for neither "the number of times a defendant violates the terms of his supervised release [nor] the number of previous revocations of supervised release").

Andino also focuses on the district court's statement that he had "yet to learn his lesson" from his prior revocation sentences.  There are at least two problems with his argument.  The first is that this is an accurate statement of Andino's revocation record.  The second is that to the extent Andino is suggesting this was the only reason the court gave, that misrepresents the record.  Those comments were only part of the court's broader explanation and, read in context, reflected permissible sentencing considerations under § 3583(e), including Andino's history and characteristics and the need for adequate

- 14 -

deterrence. See United States v. Reardon, 111 F.4th 142, 147-48 (1st Cir. 2024); United States v. Colón-Vázquez, 180 F.4th 1, 8 (1st Cir. 2026) (rejecting procedural reasonableness challenge because the defendant "isolate[d] each underlying sentencing factor," whereas "the district court relied on a combination of facts and considerations, not on any single factor alone").

This case is unlike our decision in Mercado-Cañizares. There, the district court revoked the defendant's supervised release and sentenced him to the statutory maximum prison term of sixty months, although the advisory Guidelines range was twenty-seven to thirty-three months. 133 F.4th at 176-77. The district court noted that the conduct underlying the revocation included a new gun offense committed while the defendant was on supervision for an armed robbery involving a firearm, stated that the defendant was unable to comply with the law or his conditions of supervised release, and "recit[ed] . . . now-familiar boilerplate language" concerning the § 3553(a) factors. Id. at 180-81. Crucially, however, we found that the court did not explain why the Guidelines range failed to account for its concerns about adequate deterrence and protection of the public or why those concerns warranted the statutory maximum. See id. We held that an inability to comply with supervision, "which is common to all revocations of supervised release," cannot itself justify a variance. Id. at 181. Here, by contrast, the district court's

- 15 -

specific explanations, based on the record before it, made it clear both why the advisory Guidelines range did not adequately account for Andino's conduct and history and why the statutory maximum was warranted.  See Mendes, 107 F.4th at 29-30; see also United States v. Polaco-Hance, 103 F.4th 95, 101 (1st Cir. 2024) (recognizing, in reviewing an upward variance, that "we may glean a court's explanation for the chosen sentence 'by fair inference from the sentencing record'" (quoting Montero-Montero, 817 F.3d at 38)).[7]

**B.**

Andino next argues that the district court's stated reasons for imposing the revocation sentence at issue reveal that the court relied on the need for retribution, a sentencing factor that 18 U.S.C. § 3583(e) does not permit a court to consider when revoking a defendant's supervised release.  In support, Andino says his violations reflected only "a refusal to be supervised," not "any harm real or potential to the public," thus, in his view, rendering his sentence "punitive and not rehabilitative."

---

[7]  In his reply brief, Andino attempts to distinguish three cases cited by the government -- United States v. Vargas-Dávila, 649 F.3d 129 (1st Cir. 2011), abrogated in part by Esteras v. United States, 606 U.S. 185 (2025); United States v. Soto-Soto, 855 F.3d 445 (1st Cir. 2017); and United States v. Rand, 93 F.4th 571 (1st Cir. 2024) -- on the ground that they involved different aggravating facts, smaller variances, or both.  We need not decide how closely those cases resemble this one because the district court's explanations here were adequate on this record.

We are guided by the Supreme Court's decision in Esteras v. United States, 606 U.S. 185 (2025). Esteras explained that § 3583(e) permits a district court to "revoke [a] term of supervised release and require reimprisonment" "only 'after considering' an enumerated list of sentencing factors: those 'set forth in [18 U.S.C.] section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).'"[8] Id. at 188 (quoting 18 U.S.C. § 3583(e)). "Conspicuously missing from this list is § 3553(a)(2)(A), which directs a district court to consider 'the need for the sentence imposed' 'to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.'" Id. Because "[t]he itemized list in § 3583(e) is exhaustive" and "suppl[ies] the universe of factors that the district court can consider," id. at 198, a district court deciding whether to revoke a defendant's supervised release and require reimprisonment "must consider the forward-looking ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the backward-looking purpose of retribution," id. at 196. Esteras added that "[a] court may consider the nature and circumstances of the offense as relevant for the considerations set forth in §§ 3553(a)(2)(B), (C), and (D) -- namely, deterrence,

_____

[8] Those enumerated factors include, as relevant here, "the nature of the offense, the offender's history and characteristics, the need for deterrence, and the need to protect the public." United States v. Reardon, 111 F.4th 142, 147 (1st Cir. 2024).

- 17 -

incapacitation, and rehabilitation -- but [that] a court cannot consider the nature and circumstances of the offense as relevant to § 3553(a)(2)(A)'s retributive focus." Id. at 200.

We have recognized that Esteras abrogated our decision in United States v. Vargas-Dávila, 649 F.3d 129 (1st Cir. 2011), insofar as Vargas-Dávila held that "[a]lthough section 3583(e)(3) incorporates by reference, and thus encourages, consideration of certain enumerated subsections of section 3553(a), it does not forbid consideration of other pertinent section 3553(a) factors," including § 3553(a)(2)(A). Id. at 132; see Judgment, United States v. Berroa-De la Cruz, No. 22-1582[9] at 2 n.1 (1st Cir. Nov. 19, 2025) (noting that Esteras abrogated Vargas-Dávila).[10]

---

[9] The government cites Berroa-De la Cruz as No. 22-1583. The correct appeal number is No. 22-1582.

[10] Esteras clarified that, because § 3553(a)(2)(A) "speaks only to the 'offense,' and 'offense' here can mean only the underlying criminal conviction," the Court was addressing only whether § 3583(e) precludes consideration of "retribution for the underlying criminal conviction." 606 U.S. at 194 n.5 (quoting § 3553(a)(2)(A)). The Court separately addressed the government's argument that "§ 3553(a)(4)(B) and § 3553(a)(5) authorize courts to consider policy statements issued by the Sentencing Commission" which provide that "the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision" and that a court may "sanction" an offender's "breach of trust." Id. (alteration in original) (quoting United States Sentencing Commission, Guidelines Manual ch. 7, pt. A, intro. 3(b) (Nov. 2024)). The Court "t[ook] no position on whether this is a permissible consideration." Id.

We have since noted that "Esteras expressly leaves open the question whether consideration of the seriousness of the violation is permissible," Judgment, United States v. Berroa-De la Cruz,

Recognizing the concern that "it would be difficult for appellate courts to determine whether a district court has impermissibly relied on § 3553(a)(2)(A)," Esteras concluded with "a few observations about appellate review." 606 U.S. at 202. Notably, the Court explained that "[m]uch will turn on whether the defendant object[ed]." Id. "If the defendant does not make the district court aware that it may be impermissibly relying on § 3553(a)(2)(A), then the defendant's appeal will be governed by plain-error review." Id. "In that event, the district court's order revoking supervised release and requiring reimprisonment will be affirmed unless it is 'clear' or 'obvious' that the district court actually relied on § 3553(a)(2)(A)[] because it did so either expressly or by unmistakable implication." Id. at 202-03 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). The Court specified that an objection allows the district court to "withdraw any impermissible justification or explain that a stray reference to a § 3553(a)(2)(A) factor was intended to bear on another § 3553(a) factor or [was] merely prefatory." Id. at 203.

_____

No. 22-1582 at 2 n.1 (1st Cir. Nov. 19, 2025), and we do not decide that question today. In this case, the district court did not refer to Andino's underlying drug conviction or suggest that he deserved additional punishment for it, which aligns with the Court's holding in Esteras. Moreover, the district court here did not rely on the seriousness of Andino's violations. Instead, the district court remarked only on his history of supervised release violations and prior revocations, which relate to the permissible consideration of deterrence. Thus, we do not reach the question Esteras left open.

- 19 -

Because Andino did not object that the district court was impermissibly relying on § 3553(a)(2)(A), plain error review applies under Esteras. He fails that review because, as explained below, it is not clear or obvious that the district court actually relied on § 3553(a)(2)(A), either expressly or by unmistakable implication. In applying that standard, we bear in mind that a court may consider a defendant's past conduct insofar as it bears on permissible forward-looking considerations under § 3583(e). See Esteras, 606 U.S. at 196, 200; Mendes, 107 F.4th at 29-30.

Contrary to Andino's assertion, the record does not reflect that the district court imposed the thirty-six-month revocation sentence to exact "retributive punishment." The court's explanations centered on Andino's conduct and supervision history, which in turn bore on sentencing factors that § 3583(e) expressly incorporates, including his history and characteristics and the forward-looking need for deterrence. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), 3583(e); Esteras, 606 U.S. at 196; see also Reardon, 111 F.4th at 148 & n.4 (holding that, although the defendant's supervised release violations were not themselves "criminal," the district court reasonably concluded from his "blatant disregard for the court's authority" and "attempts at illicit money-making" that the revocation sentence was "necessary to deter further criminal conduct"). The court's statement that Andino had "yet to learn his lesson" was a realistic assessment of

his repeated noncompliance with court-ordered supervision.  Andino himself concedes that a term of incarceration may be warranted; his disagreement is with the court's decision as to the appropriate term of imprisonment.  We do not accept Andino's assertion that the record contains no showing of "real or potential" harm to the public.  The reporting, location monitoring, and other conditions of release he continually violated served, among other things, to deter further criminal conduct and protect the public from further crimes by him.  See 18 U.S.C. §§ 3553(a)(2)(B)-(C), 3583(d).[11]

The district court's judgment is **affirmed**.

---

[11]  In his reply brief, Andino faults the district court for failing to address expressly his counsel's statement at sentencing that Andino had suffered several family losses and was not in a good psychological state when he committed his violations. Because Andino did not raise this argument in his opening brief, it is waived. See Dor v. Bondi, 161 F.4th 1, 10 n.12 (1st Cir. 2025). In any event, we "do not require a sentencing court to 'address every argument that a defendant advances in support of his preferred sentence.'" United States v. Meléndez-Rivera, 139 F.4th 83, 95 (1st Cir. 2025) (quoting United States v. Colón-Cordero, 91 F.4th 41, 51 (1st Cir. 2024)).